IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BERNIE DARST, | : | Case No. 3:15-cv-00056 |
| | : | |
| Plaintiff, | : | Judge Thomas M. Rose |
| | : | |
| v. | : | |
| | : | |
| ACOSTA SALES AND MARKETING, INC., ET AL., | : | |
| | : | |
| Defendants. | : | |

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. 25)**

This case is before the Court on the Motion for Summary Judgment (Doc. 25) filed by Defendants Acosta Sales and Marketing, Inc. and Acosta Military Sales, LLC (together, "Acosta"). Plaintiff Bernie Darst ("Darst") brought this action for damages and injunctive relief based upon Acosta's allegedly unlawful termination of his employment. (Doc. 4 at 1.) Darst asserts two claims in his Complaint: unlawful age discrimination in violation of Ohio law and wrongful termination in violation of the public policy of the State of Ohio. (*Id.* at ¶¶ 24-26.) Acosta moves for summary judgment in its favor on both of Darst's claims. (Doc. 25 at 1.) In response to Acosta's motion, Darst conceded that the evidence is insufficient to support his age discrimination claim. (Doc. 29 at 1.) The Court therefore **GRANTS** Acosta's Motion for Summary Judgment as to that claim. As more fully discussed below, the Court **DENIES** the Motion for Summary Judgment as to Darst's remaining claim because a genuine issue of material fact exists as to the reasons for the termination of Darst's employment.[1]

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Callum Morris in drafting this opinion.

I.  **BACKGROUND**

In 1989, Bernie Darst ("Darst") was hired by C. Lloyd Johnson Co., a company that represented clients selling food products to grocery stores and military commissaries. (Doc. 29 at 2.) Acosta acquired C. Lloyd Johnson in 2008, at which point Darst became Acosta's Central Region Manager, Commissary, Military Division. (Doc. 25 at 3.) Darst was supervised at Acosta by James Paseur ("Paseur"), who was supervised by Vice President of Retail Sales, Cindy Byrd ("Byrd"). (*Id.*) Byrd reported to David Johnson ("Johnson"), who ultimately made the decison to discipline and ultimately terminate Darst. (*Id.*)

As Regional Manager, Darst supervised Unit Managers in Acosta's Central Region, which included the Dayton, Ohio area as well as the northeastern and southwestern parts of the country. (*Id.* at 4.) Darst's job entailed visiting commissaries to speak with management and to ensure Acosta's clients' products were properly stocked and displayed. (*Id.*) Darst was also responsible for communicating Acosta initiatives, policies, and procedures to his Unit Managers and approving their expense reports. (*Id.*)

Unit Managers used a "Prime Team Card" to purchase items for store demonstrations and promotional items to give away to customers. (*Id.*) In the months preceding Darst's termination, two of his Unit Managers used their Prime Team Cards to misappropriate funds. (*Id.*) Unit Manager Ray Lara ("Lara") submitted an estimated $80,000 in fraudulent expenditures. (*Id.* at 4-6.) Two individuals supervised Lara during the period when he submitted the expenditures: Darst and John White ("White"). (*Id.* at 4.) Lara was later terminated for this conduct.

After the Lara incident, Acosta conducted a nationwide review of Unit Managers' expense reports. (*Id.* at 6.) As a result, Acosta discovered that another one of Darst's subordinates,

2

Richard Hamden ("Hamden"), had purchased $12,000 in Visa gift cards over a seven month period. (*Id.*) At the time, Hamden was assigned to two stores and was authorized to spend only $1,200 per year on each store. (*Id.*) Acosta's policy, however, did not require Unit Managers to track who gift cards were given too, nor did it prohibit managers from purchasing the type of gift cards used by Hamden. (Doc. 29 at 4.)

Darst met with Hamden on May 2, 2014 to discuss his use of the Prime Team Card and to advise him that he had spent more than was allowed. (Doc. 25 at 8.) Darst also participated in a conference call with Byrd and Paseur, during which Hamden could not provide the names of individuals who received the gift cards. (*Id.*) Hamden was terminated on June 6, 2014. (*Id.*)

On September 11, 2014, Darst and White were issued written warnings—Darst's first with the company—for approving Lara's fraudulent expense reports. (*Id.* at 10.) According to Acosta, White accepted responsibility for the incident, while Darst refused to accept any responsibility for what happened. (*Id.*)

Acosta subsequently introduced new policies and procedures to prevent the type of fraudulent activity that had occurred with Lara and Hamden. (*Id.* at 11.) According to Acosta Human Resources Manager, Angela Daniel, Darst was "dismissive and not supportive" of these changes in policy. (*Id.*) During conference calls with Regional Managers, Darst would vocally express his dislike for the new procedures. (*Id.*) This worried Acosta's management because Darst's peers considered him to be a leadership figure. (*Id.*)

On September 29, 2014, Darst was called to testify at an unemployment hearing for Hamden. (*Id.*) At the hearing, Darst testified that he did not think Hamden should have been fired because he did not violate a clear company policy. (Doc. 29 at 3-4.) Acosta's

3

representative at the hearing notified management that Darst also testified that he was not privy to the information that led to Hamden's termination—even though Darst knew that Hamden was investigated and terminated for misuse of the Prime Team Card. (Doc. 25 at 11.)

Darst claims that his unfavorable testimony at the hearing led to his termination. (Doc. 29 at 8 (citing Doc. 23 at 228-230).) During the October 15, 2014 conference call in which Darst was terminated, Darst's supervisors discussed his testimony at the hearing with him and identified what they believed to be untruthful statements. (Doc. 24-1, Jt. Ex. 24.)

Johnson, the Acosta executive who terminated Darst, testified that Darst would have been terminated regardless of his testimony at the hearing. (Doc. 25 at 12 (quoting Doc. 23 at 90-91).) The Termination Form documenting the reasons for Darst's termination states:

> Bernie's lack of leadership has shown that he does not support decisions being made by his supervisors and upper management within the company. As a manager, Bernie has failed to enforce company policies and procedures with his direct reports and he has failed to hold them accountable; which has resulted in the termination of several unit managers for violation of company policies, fraudulent activities and inappropriate use of company funds while under Bernie [sic] leadership.

(Doc. 24-1, Jt. Ex. 22.)

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

4

party."  *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (quoting *Anderson*, 477 U.S. at 250).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party.  *Anderson*, 477 U.S. at 255.  If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible.  10A *Wright & Miller, Federal Practice and Procedure*, § 2726.  Rather, credibility determinations must be left to the fact-finder.  *Id*.  The mere existence of a scintilla of evidence in support of the nonmoving party, however, is not sufficient to avoid summary judgment.  *Anderson*, 477 U.S. at 252.  "There must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.

The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.  *Id*.

In ruling on a motion for summary judgment, "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091 (1990).  Thus, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.  The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted.  Fed. R. Civ. P. 56(c).

### III.   ANALYSIS

In order to prevail on a claim for wrongful termination in violation of Ohio public policy, Darst must show: (1) that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).  *Painter v. Graley*, 70 Ohio St. 3d 377, 384 (Ohio 1994).  The first two elements are questions of law and the latter two are questions of fact.  *Collins v. Rizkana*, 652 N.E.2d 653, 657-658 (Ohio 1995).

The Ohio Supreme Court has recognized a claim for wrongful termination in violation of Ohio public policy where an employee alleged that he was terminated due to testifying truthfully,

6

but unfavorably to his employer, in a civil proceeding. *Sabo v. Schott*, 70 Ohio St. 527, 527 (Ohio 1994). The first two elements of the claim therefore have been met, as it has been established under Ohio law that the need for honest testimony in formal proceedings is a matter of clear public policy.

As for the final two elements, there is a material dispute. Acosta argues in its Reply that it is undisputed that Acosta was deliberate in its investigation of the misconduct by Darst's subordinates (Hamden and Lara) and only decided to terminate Darst after finding that he had "(1) failed to take any responsibility for his role in the Lara matter, stating instead that he 'only had him for part of the year,' (2) failed to support the Company's efforts to implement new policies and procedures to prevent fraud, and (3) exhibited a disgruntled attitude toward the Company by making inappropriate and dismissive comments to his managers." (Doc. 31 at 1.) Thus, according to Acosta, the record is clear that Darst's termination was motivated by overriding business interests and he would have been terminated regardless of his testimony at Hamden's unemployment hearing. (Doc. 25 at 14.)

Conversely, Darst has come forward with evidence that could support an inference that his termination was motivated by his testimony at Hamden's hearing. Among other evidence, Darst points to the notes from his termination conference, in which Johnson indicates that he believed that Darst's testimony was inaccurate (Doc. 24-1, Jt. Ex. 24); Johnson's deposition testimony that Darst's "statement [at the hearing] that he did not support the termination [of Hamden] was not a deciding factor, but it was a tipping point" in the decision to terminate Darst's employment (Doc. 21 at 31); and evidence showing that Darst had already been disciplined for his alleged role in his subordinates' misconduct prior to Hamden's hearing, but was fired just three weeks after his

7

testimony at the hearing.

The Court is obligated to construe the evidence in favor of Darst as the non-moving party. When doing so, it is plain that a genuine issue of material fact exists as to whether Acosta had an overriding business interest in terminating Darst's employment or whether Darst's termination was motivated by his testimony at Hamden's hearing. As the Ohio Supreme Court has stated, this is a determination that must be made by the trier of fact. *Collins*, 652 N.E.2d 653, 657-658 (Ohio 1995). Accordingly, the Court **DENIES** Acosta's motion for summary judgment on Darst's claim for wrongful termination in violation of the public policy of the State of Ohio.

### IV. CONCLUSION

For the reasons stated above, Acosta's Motion for Summary Judgment (Doc. 25) is **GRANTED** as to Darst's age discrimination claim and is **DENIED** as to his claim for wrongful termination in violation of the public policy of the State of Ohio.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, July 21, 2016.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE